BARNETTE, Judge.
This is an appeal by the State of Louisiana through the Department of Highways from a judgment in an expropriation proceeding fixing the value of the land taken at $800. The State contends that the $500 deposited in the registry of the court at the time of the taking represents the value of the land taken.
The landowners, appellees in this proceeding, are Calbert Alfred Barton and wife Jaunita Shedick Barton. The property taken is the rear portion of a lot in a residential section of the City of New Orleans. The lot, before the taking, measured 50 feet in width by 231.66 feet facing Ray Avenue in Haydel Heights Subdivision. The portion taken for a right-of-way for Interstate Highway 10 is the rear 78 feet, which is almost exactly one-third of the lot. The lot remaining after the taking measures 50 feet by 153.34 feet and is ample for residential use in conformance with the zoning restrictions.
Three other proceedings for expropriation of identical portions of three other separate and nonadjacent lots on the same street all having the same measurements and value were consolidated with this proceeding for trial below and are consolidated in this court on appeal. The respective defendants and the docket numbers of those cases in this court are Manuel Branch, number 3813; Jeannette Spots Brundy, number 3814; and Anderson E. Tate, number 3815. All four lots are equally affected by the taking, and the testimony below related to all the lots without distinction.
*404 The judgments are identical except for the allowance of an additional $60 to Branch and $50 to Tate to compensate for a fence taken. There-is no issue as to this item. The only issue is the fixing of the value of the portions taken at $800 each, which appellant seeks to have reduced to $500.
This opinion will apply without distinction to all four cases, but a separate decree will be rendered in each case.
The property was taken for highway purposes under the provisions of LSA^R.S. 48:441 et seq., known, .as--the “quick-taking” statute. ..Pursuant to the provisions of the statute, the State deposited in the registry of the court $500. After judgment below an additional $300 was deposited in each case - plus the allowance for the fence in the Branch and Tate cases, and the State has appealed.
Since the' only issue is the value of the part taken, the trial below was limited to the testimony of two expert real estate appraisers. Omer J. Kuebel testified for the landowners and Eugene A. Aschaffen-burg for the State Department of Highways. Both witnesses are well qualified. Each witness testified on the basis of a study of comparable sales. Mr. Kuebel arrived at a value of $60 per front foot or $3,000 for each lot before the taking. Mr. Aschaffenburg’s appraisal was $70 per front foot, but he used the before and after the taking approach in arriving at his conclusion.
The appraisers found that the lots in the vicinity, sales of which they. used as comparables, varied in depth from 110 feet to 231 feet. Significantly, the variance in depth did- not materially affect the sale price in most cases. Mr. Aschaffenburg gave consideration to this circumstance and placed less value per square foot on the back óne-third of the lots taken. Mr. Kuebel, on the other hand,, computed the value per square .foot without distinction in relative value of the front two-thirds and the rear óne-third. On these bases Mr. Aschaffenburg arrived at a valuation of $500 and Mr. Kuebel arrived at a valuation of $1,000 for the part taken. Aschaffen-burg explained that he considered the value of the lots before the taking and then with the rear one-third cut off. The difference in value before and after was the basis of his appraisal of the portion taken.
Mr. Aschaffenburg agreed that Mr. Kue-bel’s appraisal of $60 per front foot was “very close to being correct” and that his $70 appraisal was influenced upward by the inclusion among the comparables of a corner lot sale. Actually, therefore, there is practical agreement of the experts on the before taking value. The $500' differr ence between their appraisals of the part taken results from the difference in approach to their respective conclusions.
The trial judge, in his “Reasons for Judgment” found that $500 was probably as much as the owners could get for the part taken if they were willing to sell, but there was no evidence that they wanted to sell. Rather, he found, they were forced to sell and that $800 was a “fair value.”
As a matter of fact, we doubt that the rear one-third of the lot measuring approximately 50 by 78 feet and hemmed in without means of access would be saleable at any price. But obviously it has substantial value as a part of the whole lot, and the owners are entitled to compensation on the basis of its proportionate actual value as a part of the whole. The fact that the sale is forced is not a factor to be considered.
We believe there is some merit in Mr. Aschaffenburg’s expert opinion that the rear one-third of the lot has less value per square foot than the front two-thirds. This, however, is a relative factor having more or less significance as the depth of the lot increases or decreases.
It is our opinion that the depth of the lot in question is not so disproportionate to its width as to depreciate the value *405 of the back one-third to the extent found by Mr. Aschaffenburg. The finding of the trial judge of a value of $800 for the part taken apparently takes this factor into account. It is obvious that he gave full consideration to the opinions of both experts. We find no manifest error in his judgment. State Through Department of Highways v. Hub Realty Company, 239 La. 154, 118 So.2d 364 (1960); State v. Walker, 129 So.2d 35 (La.App. 2d Cir. 1961).
There is no issue over the appraiser’s fees fixed by the court for Mr. Kuebel nor the allowance of $100 to him as a witness fee for testifying and taxing same as costs.
The judgment appealed is affirmed.
Affirmed.